## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MANDY GILL, | CASE NO. 3:13-cv-02112-GBC |
| Plaintiff, | |
| | (MAGISTRATE JUDGE COHN) |
| v. | |
| CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY, | MEMORANDUM |
| Defendant. | Docs. 1, 9, 10, 11, 12 |

### I.     Introduction

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying the application of Plaintiff Mandy Gill disability insurance benefits ("DIB") under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act").[1] Plaintiff presented only a single allegation of error on the part of the administrative law judge ("ALJ"), whose denial of benefits constitutes the final decision of the Commissioner, namely, that the ALJ erred in failing to give controlling weight to limitations in handling and fingering contained in the opinion of her treating physician, Dr. Alice McCormick. However, Dr. McCormick had last examined Plaintiff's musculoskeletal system in June of 2009, well before Plaintiff's alleged onset in April of 2010 or Dr. McCormick's opinion in March of 2011. The only time Dr. McCormick saw Plaintiff during the relevant period was in June of 2010, when Plaintiff had gastrointestinal problems and did not mention pain or limitation in her extremities.

---

[1] Plaintiff's income levels exceeded those allowed for supplemental security income pursuant to 42 U.S.C. §1382-1383. (Tr. 108).

Moreover, although Plaintiff had identified functional problems with her hands in 2006, she never indicated pain, numbness, tingling, or functional limitations with her hands in visits with multiple doctors during the relevant period. She indicated in her Function Report that she had no problem with using her hands. The ALJ cited to this evidence in her decision and rejected Dr. McCormick's opinion on the ground that Dr. McCormick had not examined Plaintiff during the relevant period and that her opinion was inconsistent with the record. The Court reviews the ALJ's decision under the deferential substantial evidence standard of review, where the Court must affirm the ALJ's decision if any reasonable person would accept the relevant evidence as adequate to support denial. Here, a reasonable person would have found Plaintiff's failure to mention pain, numbness, tingling, or problems with her hands at any time during the relevant period, along with the lapse in time since Dr. McCormick's last evaluation of Plaintiff, to be adequate to reject her opinion. Plaintiff asserts no other allegation of error, so the Court concludes that substantial evidence supports the ALJ's decision.

## II.     Procedural Background

On February 28, 2011, Plaintiff filed an application for DIB under Title II of the Act. (Tr. 103-107). On June 9, 2011, the Bureau of Disability Determination denied this application (Tr. 80-92), and Plaintiff filed a request for a hearing on July 25, 2011.  (Tr. 95-96). On May 11, 2012, an ALJ held a hearing at which Plaintiff—who was represented by an attorney—and a vocational expert ("VE") appeared and testified. (Tr. 50-78).  On June 4, 2012, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 10-30). On July 5, 2012, Plaintiff filed a request for review with the Appeals Council (Tr. 7-9), which the Appeals Council denied on June 14, 2013, thereby affirming the decision of the ALJ as the "final decision" of the

Commissioner. (Tr. 1-6).

On August 9, 2013, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On November 19, 2013, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 9, 10). On January 2, 2014, Plaintiff filed a brief in support of her appeal ("Pl. Brief"). (Doc. 11). On January 31, 2014, Defendant filed a brief in response ("Def. Brief"). (Doc. 12). On April 29, 2014, the Court referred this case to the undersigned Magistrate Judge. Both parties consented to the referral for adjudication to the undersigned on June 13, 2014, and an order referring the case to the undersigned for adjudication was entered on June 13, 2014. (Doc. 15, 16).

## III.   Standard of Review

When reviewing the denial of disability benefits, the Court must determine whether substantial evidence supports the denial. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence is a deferential standard of review. See Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence." Pierce v. Underwood, 487 U.S. 552, 564 (1988). Substantial evidence requires only "more than a mere scintilla" of evidence, Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999), and may be less than a preponderance. Jones, 364 F.3d at 503. If a "reasonable mind might accept the relevant evidence as adequate" to support a conclusion reached by the Commissioner, then the Commissioner's determination is supported by substantial evidence. Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999); Johnson, 529 F.3d at 200.

## IV.     Sequential Evaluation Process

To receive disability or supplemental security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that he has a physical or mental impairment of such a severity that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step evaluation process to determine if a person is eligible for disability benefits. See 20 C.F.R. § 404.1520; see also Plummer, 186 F.3d at 428. If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed. See 20 C.F.R. § 404.1520.  The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("listing"); (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. See 20 C.F.R. §§ 404.1520, 416.920. Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four.  If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability within the meaning of the Act lies with the claimant. See 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

### V. Relevant Facts in the Record

Plaintiff was born on April 22, 1958 and was classified by the regulations as a person closely approaching advanced age through the date of the ALJ decision. 20 C.F.R. § 404.1563. (Tr. 34).   Plaintiff has at least a high school education and past relevant work as an activity aid in a nursing home facility, clerical/data entry, and clerical/general office. (Tr. 72-73).

Medical records from 2006 indicate that Plaintiff was reporting shoulder pain above the elbow. (Tr. 288).   X-rays of her shoulders on January 8, 2006 were "unremarkable." (Tr. 286, 291). Plaintiff saw Dr. Kevin Colleran, M.D. on January 16, 2006, reporting shoulder pain that radiates down both arms with a tingling sensation at night. Her hands were "quite symptomatic at night." (Tr. 293). She reported that she loses her grip and has trouble controlling her thumbs. (Tr. 295). However, her "strength was difficult to assess because of poor effort." (Tr. 293). Dr. Colleran opined that she "also has a component of carpal tunnel in the hands" and ordered a nerve conduction study ("EMG"). (Tr. 293). However, the EMG was normal with no evidence of radiculopathy. (Tr. 296).

She continued to report problems with numbness in her hands in November of 2006, but indicated that it was only a problem while she was sleeping at night. (Tr. 175). Her orthopedist,

Dr. Alan Gillick, M.D., recommended that she try carpal tunnel splints but noted that her EMGs indicated no evidence of carpal tunnel syndrome. (Tr. 175). By April 10, 2007, she was reporting that Celebrex works "throughout the day." (Tr. 176). She was about to start working as a recreational aide, and Dr. Eugene Grady, M.D., indicated that there were "no contraindications" to her ability to perform this work. (Tr. 176). She did not indicate any upper extremity problems in December of 2007, January of 2008, July of 2008, or October of 2008.  (Tr. 177-80).

Plaintiff was treated by Dr. Alice McCormick, M.D., from 2005 through 2010. However, her only visit with Dr. McCormick after her alleged onset date was on June 14, 2010, when she reported cramping and gastrointestinal symptoms. (Tr. 187). The record indicates no mention of pain and Dr. McCormick did not perform a musculoskeletal exam. (Tr. 187). Plaintiff had back pain on exam in December of 2005 and March and June of 2006 but had no musculoskeletal symptoms on exam in November of 2006. (Tr. 198-205). Exams in 2007 indicated back pain and symptoms, but an exam in June of 2009 indicated no musculoskeletal symptoms. (Tr. 191-97).

Plaintiff was also treated prior to and during the relevant period by Dr. Elizabeth-Karazim-Horchos, D.O., a physiatrist, for pain. In her initial evaluation on November 5, 2008, her chief complaint was low back pain. (Tr. 372). She also indicated occasional pain in her groin. (Tr. 372). She had been told in the past that she was "not a surgical candidate" and had "not really explored the idea of vocational rehab or the Office of Vocational Rehabilitation." (Tr. 372). She did not indicate any problem in her upper extremities at this visit or at visits on December 4, 2008, February 3, 2009, or March 3, 2009. (Tr. 367-72).

On May 29, 2009, she saw Dr. Horchos and indicated pain in her arms, hip, and neck, with "functional" but decreased motor strength and "[s]ensation [that was] somewhat diminished

C6 distribution, left greater than right." (Tr. 365). Her symptoms indicated brachial radiculopathy. (Tr. 365). An EMG on August 17, 2009 indicated evidence consistent with moderate to severe carpal tunnel syndrome and C6 radiculopathy. (Tr. 220). On September 24, 2009, she reported a feeling like "ants are crawling" in her left arm and results from her MRI were consistent with her EMG. (Tr. 364).

On January 4, 2010, she reported that she was "doing okay" but had discomfort in the groin area. (Tr. 362). She indicated that she had tried her husband's Percocet and it had relieved her pain, so she asked for a prescription. (Tr. 362). By March 2, 2010, Plaintiff reported to Dr. Horchos that she was "doing fine" and that Percocet was "effective at controlling her pain levels." (Tr. 360). She denied weakness in her hands, with normal strength, reflexes, and sensation. (Tr. 360). She reported that her shoulder had been "bothering her somewhat."  (Tr. 360). On March 13, 2010, shoulder x-rays showed mild degenerative changes. (Tr. 388).

On April 14, 2010, Plaintiff reported "occasional numbness and tingling into her left upper extremity" to Dr. Horchos but indicated "the discomfort was not present all the time and it just depended on how she holds her neck." (Tr. 282). Dr. Horchos noted that Plaintiff she was "not too interested" in physical therapy or additional injections, although she reported that injections and Percocet had helped. (Tr. 282). Plaintiff's strength was 5/5, she denied dropping things, her reflexes, range of motion, and sensation were intact, and there were no impingement signs. (Tr. 282).

On August 5, 2010, Plaintiff reported to Dr. Horchos that she was "doing well" and had no "new updates to her condition." (Tr. 283). She stated that her medications gave her "fairly good effect" and she had normal strength and reflexes. (Tr. 283). On October 5, 2010, Plaintiff

reported to Dr. Horchos that she was doing "okay" overall, except for pain that was "localized over the shoulder" with only occasional numbness in the left arm. (Tr. 284). Aside from a positive impingement sign in her left shoulder, her exam was normal with 5/5 strength throughout and intact sensation. (Tr. 284).

On December 15, 2010, Dr. Horchos notes indicate only "occasional discomfort in her left leg" with "no new issues." (Tr. 285). Plaintiff continued to be active, "walking, etc.," had normal sensation, and denied giveaway strength. (Tr. 285). On February 28, 2011, Plaintiff reported to Dr. Horchos that her pain was "particularly in the left shoulder" (Tr. 335). An MRI of the shoulder indicated evidence of a tear and teninosis. (Tr. 286, 298). However, she "deni[ed] numbness or tingling distally into her hand." (Tr. 355). Dr. Horchos noted "I will refill her meds as they are effective in controlling her pain." (Tr. 355).

On March 14, 2011, Dr. McCormick completed a medical source opinion. (Tr. 183-84). She opined that Plaintiff was limited in her ability to reach, handle, and finger, but did not specify the nature or degree of these limitations and did not include any supportive medical findings. (Tr. 184). She had earlier indicated that Plaintiff was limited in her ability to use her upper extremities to push or pull because of brachial radiculopathy and spondylosis. (Tr. 183). In Plaintiff's "master problem list," she indicated cervicalgia, intervertebral disc displacement, spondylosis, brachial radiculopathy, and chronic obstructive pulmonary disorder. (Tr. 185).

On March 21, 2011, Plaintiff saw Dr. Colleran. She had only "intermittent" pain that "mainly involves…her shoulder." (Tr. 299, 301). It was not located below the elbow. (Tr. 299). She "denie[d] any symptoms into the hand" and described herself as a homemaker. (Tr. 301). On April 6, 2011, Plaintiff reported to Dr. Horchos that her shoulder pain seemed to be worse but

admitted she was taking care of her husband. (Tr. 353). Her strength and sensations were normal. (Tr. 353). On June 14, 2011, Plaintiff reported to Dr. Horchos that she was "doing okay with medications" and mentioned back pain, but no shoulder or extremity symptoms. (Tr. 352). On July 19, 2011, Plaintiff reported to Dr. Horchos that her medications helped her except for at night when she was trying to sleep. (Tr. 350). Dr. Horchos noted that Plaintiff was reporting pain in her back and legs, and also that her right shoulder was "bothering her," but an injection into her shoulder demonstrated improved active range of motion. (Tr. 350).

On August 3, 2011, Plaintiff saw Dr. Matthew Henderson, where she described back and groin pain, but did not mention shoulder, arm, or hand symptoms. (Tr. 402). She had "no radicular symptoms." (Tr. 403).  On August 18, 2011 Plaintiff reported to Dr. Horchos that Oxycontin diminished her pain at night, her right shoulder injection "helped her significantly" and she "denied any numbness or tingling into her arms." (Tr. 410).

The Court notes that Plaintiff submitted additional records from the Northeastern Eye Institute to the Appeals Council that were made a part of the administrative record. (Tr. 5). These records document eye impairments from June 9, 2010 to October 10, 2012. When the Appeals Council denies review, evidence that was not before the ALJ may only be used to determine whether it provides a basis for remand under sentence six of section 405(g), 42 U.S.C. ("Sentence Six"). Szubak v. Secretary of Health and Human Servs., 745 F.2d 831, 833 (3d Cir. 1984). Sentence Six requires a remand when evidence is "new" and "material," but only if the claimant demonstrated "good cause" for not having incorporated the evidence into the administrative record. Id. In order to be material, "the new evidence [must] relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired

disability or of the subsequent deterioration of the previously non-disabling condition." Id. The relevant time period is "the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(b); Mathews v. Apfel, 239 F.3d at 592. The materiality standard also "requires that there be a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination." Szubak v. Sec'y of Health & Human Servs., 745 F.2d 831, 833 (3d Cir. 1984). Here, most of these records existed prior to the ALJ's decision, and Plaintiff has asserted no "good cause" for their omission. Moreover, Plaintiff has not asserted that the ALJ erred in evaluating eye impairments, so there is no "reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination." Thus, the Court will not consider these records and will not remand pursuant to Sentence Six. Plaintiff also received mental health treatment during the relevant period, but has not alleged any error in the ALJ's analysis of her mental impairments. (Tr.  304-07, 329-349, 416-36).

On March 15, 2011, Plaintiff completed a Function Report. She indicated pain in her back, neck, and shoulders, but did not indicate pain in her hands, wrists, or elbows. (Tr. 145-46). She indicated that bending, walking, standing, and sitting cause her pain, but did not indicate that handling or fingering cause her pain. (Tr. 146).   She indicated that her "illnesses, injuries, or conditions affect" lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, seeing, completing tasks, concentration, and following instructions, but not using her hands. (Tr. 150). She indicated that she can travel by driving a car and that she is able to shop in stores. (Tr. 152). Her interests include reading, cryptograms, and crafting. (Tr. 151). She is able to make sandwiches, eggs, and one-pan meals, although her problems with standing make it more difficult. (Tr. 153). She is able to do laundry, vacuum with a light vacuum, water plants, and

groom her cats. (Tr. 153). She clips their claws, combs, them, medicates them, and scoops their litter box. (Tr. 154). She indicated that she had to care for her husband's "basic needs" while he underwent shoulder surgery. (Tr. 154). She had some problems in personal care as a result of her arms and shoulders, but had no problem in her ability to feed herself. (Tr. 154).

At the hearing before the ALJ, Plaintiff testified that is able to drive a stick shift, but that it hurts her left leg and back. (Tr. 57). She testified that she felt she was unable to work because her pain limited her ability to stand, get out of chairs, and reach, and she was depressed. (Tr. 61). Plaintiff testified that she was only being treated for her physical impairments with once-a-month injections to her shoulder at Northeast Rehabilitation and by Dr. McCormick. (Tr. 64). She testified that reaching caused pain into her fingertips. (Tr. 66). She testified that she was able to do dishes, light dusting, and food shopping, but could not cross-stitch, do crafts, or use her computer because her fingers get sore. (Tr. 67, 69). She testified that she could not lift or carry anything. (Tr. 68).

The vocational expert testified that Plaintiff had past relevant work as an activity aid in a nursing home facility, clerical/data entry, and clerical/general office. (Tr. 72-73). The vocational expert testified that an individual with an RFC as eventually assessed by the ALJ, described below, would be able to perform work in the clerical/data entry field and clerical/general office field. (Tr. 73-74). The vocational expert testified that, once limited to simple, routine tasks, the Plaintiff would be unable to perform past relevant work, but would be able to perform other work in the national economy, in position like a receptionist/information clerk, cashier, and general office clerk. (Tr.74-75). The VE testified that if Plaintiff had the additional limitations of only occasionally use of her hands for fingering or keying and also moderate difficulty in

understanding detailed instructions, responding and interacting appropriately with the general public, and marked difficulty carrying out detailed instructions, she would not be able to perform any past work or other work in the national economy. (Tr. 76).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 7, 2010, the alleged onset date. (Tr. 15). At step two, the ALJ found that Plaintiff's degenerative spondylosis of the cervical spine, degenerative disc disease of the lumbar spine, osteoarthritis, chronic obstructive pulmonary disease, left shoulder tendinosis with partial tear, and depression were medically determinable and severe. (Tr. 15). The ALJ found that Plaintiff's carpal tunnel syndrome was not severe because she "has not sought or received any ongoing, regular treatment for this condition and there is not any significant evidence showing that carpal tunnel syndrome has caused her any more than a minimal degree of limitation in her ability to perform any work related activities." (Tr. 15). The ALJ found that none of Plaintiff's impairments met or equaled a listing. (Tr. 16-18).

The ALJ found that Plaintiff had the RFC to perform light work that was limited to no overhead reaching, pushing, or pulling with the left arm, only occasional pushing and pulling with the right arm, no pushing and pulling with the legs, only occasional stooping, balancing, bending, crouching, kneeling, and climbing, but never climbing ladders, ropes or scaffolds, crawling, or being exposed to temperature extremes of cold, wetness, vibrations, and hazards. (Tr. 18). The ALJ also limited Plaintiff to simple, routine tasks after February 11, 2011. (Tr. 18). The ALJ found that Plaintiff could engage in her past relevant work in clerical/data entry and clerical/general office prior to February 11, 2011. (Tr. 26-27). The ALJ found that Plaintiff could perform other work in the national economy after February 11, 2011, in positions like a

receptionist/information clerk, cashier, and general office clerk. (Tr. 27). Consequently, the ALJ found that Plaintiff was not disabled and therefore not entitled to benefits. (Tr. 27).

## VI.     Plaintiff Allegations of Error

### A.     The ALJ's failure to assign controlling weight to Dr. McCormick's opinion

Plaintiff raises only one issue in her brief: whether the ALJ should have given "controlling weight" to Dr. McCormick's opinion. (Pl. Brief at 6).   The ALJ rejected Dr. McCormick's opinion because her opinion was from March of 2011, but she had not examined Plaintiff since June of 2009, when her exam was essentially normal. (Tr. 24). Although she had seen Plaintiff to fill out disability forms in February of 2010, she had explicitly noted that she did not perform an exam on that date. (Tr. 24, 189).   The ALJ also rejected Dr. McCormick's opinion because it was inconsistent with other evidence of record. (Tr. 24).

Plaintiff argues that the EMG, which was sent to Dr. McCormick, supports Dr. McCormick's opinion because it documents moderate to severe bilateral carpal tunnel syndrome and cervical radiculopathy. (Pl. Brief at 11). Plaintiff asserts that the ALJ failed to mention that the EMG showed carpal tunnel syndrome, and that "it is impossible to tell whether the ALJ even considered the Plaintiff's carpal tunnel syndrome when rendering her decision." (Pl. Brief at 11). Plaintiff disputes the ALJ's rejection of Dr. McCormick's opinion on the grounds that she did not examine Plaintiff during the relevant period because she "has been the Plaintiff's treating physician for a decade and has performed many examinations prior to completing the disability forms" and she was the "referring physician for all of the Plaintiff's diagnostic testing and was, therefore, well aware of the Plaintiff's condition." (Pl. Brief at 12). Plaintiff further asserts that the ALJ was not entitled to reject Dr. McCormick's opinion without citing contradictory medical

evidence. (Pl. Brief at 12). [2]

Controlling weight may only be assigned when a treating source opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(d)(2). Section 404.1527(c) establishes the factors to be considered by the ALJ when the opinion of a treating physician is not given controlling weight. Under subsections (c)(1) and (c)(2), the opinions of treating physicians are given greater weight than opinions of non-treating physicians and opinions of examining physicians are given greater weight than opinions of non-examining physicians. Subsection 404.1527(c)(2) also differentiates among treating relationships based on the length of the treating relationship and the nature and extent of the treating relationship. Subsection 404.1527(c)(3) provides more weight to opinions that are well supported, which means that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."  Subsection 404.1527(c)(4) states that "the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." Subsection 404.1527(c)(5) provides more weight to specialists, and subsection 404.1527(c)(6) allows consideration of other

---

[2] The Court notes that Plaintiff also asserted in her Complaint that the ALJ failed to properly evaluate her complaints of pain. (Doc. 1). However, this argument was waived by Plaintiff's failure to develop or discuss it in her brief. Conroy v. Leone, 316 F. App'x 140, 144 n. 5 (3d Cir. 2009) *(citing* Bagot v. Ashcroft, 398 F.3d 252, 256 (3d Cir.2005)). Similarly, the Plaintiff makes a general claim that the ALJ "failed in her duty to properly evaluate all of the Plaintiff's impairments," but does not develop the argument further. This argument is also waived. Id. Moreover, Defendant pointed out that all of Plaintiff's other arguments had been waived (Doc. 12), and Plaintiff did not dispute this point.

factors which "tend to support or contradict the opinion."

Here, ALJ cited significant contradictory medical evidence. For instance, the ALJ noted that Plaintiff reported "occasional numbness and tingling into her left upper extremity" to Dr. Horchos in April of 2010, but that "the discomfort was not present all the time and it just depended on how she holds her neck." (Tr. 20). She also noted that Plaintiff she was "not too interested" in physical therapy and that "Dr. Horchos also discussed pursuing injections, but the claimant was not interested in that either." (Tr. 20). During the same visit, Plaintiff's strength was 5/5, she denied dropping things, her reflexes, range of motion, and sensation were intact, and there were no impingement signs. (Tr. 20).

The ALJ also cited to Plaintiff's report on August 5, 2010, to Dr. Horchos that she was "doing well" and had no "new updates to her condition." (Tr. 283). She stated that her medications gave her "fairly good effect" and she had normal strength and reflexes. (Tr. 283). The ALJ cited to Dr. Horchos October 5, 2010 note that she was doing "okay" overall, except for pain that was "localized over the shoulder" with only occasional numbness in the left arm. (Tr. 284). Aside from a positive impingement sign in her left shoulder, her exam was normal with 5/5 strength throughout and intact sensation. (Tr. 284). The ALJ cited to Dr. Horchos December 15, 2010 note that indicated only "occasional discomfort in her left leg" with "no new issues." (Tr. 285). Plaintiff continued to be active, "walking, etc.", had normal exam and sensation, and denied giveaway strength. (Tr. 285). The ALJ cited to Dr. Horchos February 28, 2011 note that her pain was "particularly in the left shoulder" and "deni[ed] numbness of tingling distally into her hand." (Tr. 355). Dr. Horchos also noted "I will refill her meds as they are effective in controlling her pain." (Tr. 355).

The ALJ cited to Dr. Horchos April 6, 2011 note, where Plaintiff noted that her shoulder pain seemed to be worse but admitted she was taking care of her husband. (Tr. 353). Her strength and sensations were normal. (Tr. 353). The ALJ cited to Dr. Horchos June 14, 2011 note where Plaintiff reported she was "doing okay with medications" and mentioned back pain, but no shoulder or extremity symptoms. (Tr. 352). The ALJ cited to Dr. Horchos July 19, 2011 note that Plaintiff's medications helped her except for at night when she was trying to sleep. (Tr. 350). Dr. Horchos noted that Plaintiff was reporting pain in her back and legs, and also that her right shoulder was "bothering her," but an injection into her shoulder demonstrated improved active range of motion. (Tr. 350). The ALJ cited to Dr. Horchos August 18, 2011 note where Plaintiff reported that Oxycontin diminished her pain at night, her right shoulder injection "helped her significantly" and she "denied any numbness or tingling into her arms." (Tr. 410).

The ALJ noted that Plaintiff's March 21, 2011 visit to Dr. Colleran indicated that she had only "intermittent" pain that "mainly involves the side of her shoulder." (Tr. 301). At this visit, Dr. Colleran noted that she "denies any symptoms into the hand." (Tr. 301). She described herself as a "homemaker." (Tr. 301). The ALJ cites to Plaintiff's August 3, 2011 visit with Dr. Henderson, where she described back and groin pain, but did not mention shoulder, arm, or hand symptoms. (Tr. 402). She had "no radicular symptoms." (Tr. 403).

The ALJ properly characterized this treatment record and did not omit any contradictory findings. These notes constitute sufficient contradictory medical evidence for the ALJ to reject Dr. McCormick's opinion, particularly where Dr. Horchos, Dr. Colleran, and Dr. Henderson evaluated Plaintiff during the relevant period, Dr. McCormick did not evaluate Plaintiff's musculoskeletal system during the relevant period, and there is no indication that these records

were forwarded to Dr. McCormick. None of these records were included in the files provided by Dr. McCormick. (Tr. 181-251). Although Plaintiff claims that Dr. McCormick was "well aware" of Plaintiff's diagnostic tests, she did not mention carpal tunnel syndrome in her opinion, even though she had been provided the EMG showing carpal tunnel syndrome. Instead, she relied on her diagnosis of radiculopathy, which predated the EMG. (Tr. 183-84). Plaintiff's argument that the Court is unable to review the ALJ's decision because she does not acknowledge that the EMG showed carpal tunnel syndrome fails because Plaintiff has not identified any additional limitations that would flow from carpal tunnel syndrome that would not flow from radiculopathy.[3]

In these visits with Dr. Horchos, Dr. Colleran, and Dr. Henderson, Plaintiff never mentioned problems with handling or fingering and specifically denied hand symptoms. She consistently reported that her medications worked during the day, although they were less effective while she was sleeping at night. Even with regard to her shoulder pain, she generally described it as only intermittent or occasional. Plaintiff had previously reported symptoms to Dr. Horchos, but these symptoms were relieved when Dr. Horchos prescribed her Percocet prior to the relevant period. (Tr. 360-72). Plaintiff's only specific complaints of problems with handling and fingering were from 2006, four years prior to her alleged onset date. (Tr. 295).

Thus, the ALJ properly excluded limitations in handling and fingering from Plaintiff's RFC. Dr. McCormick's opinion was not entitled to controlling weight because it was "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(d)(2).

---

[3] These impairments manifest similarly, and EMGs are typically used to determine whether the symptoms are caused by carpal tunnel syndrome or "radiculopathy and other pathology of the brachial plexus." 1-3B Attorneys' Textbook of Medicine (Third Edition) § 3B.06.

The ALJ properly discounted Dr. McCormick's opinion because she did not treat Plaintiff during the relevant period, 20 C.F.R  § 404.1527(c)(2)(" We will look at the treatment the source has provided"), she did not have evidence from the relevant period to support her opinion, 20 C.F. R. § 404.1527(c)(3), her opinion was not consistent with evidence during the relevant period, 20 C.F.R. § 404.1527(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"), and because significant time had elapsed since Dr. McCormick last examined Plaintiff's musculoskeletal system.   20 C.F.R. §404.1527(c)(6) (Allowing consideration of other factors which "tend to support or contradict the opinion." ). A reasonable mind could accept this evidence as adequate to reject Dr. McCormick's opinion, so substantial evidence supports the ALJ's decision and the denial of benefits must stand.

## VIII.   Conclusion

Therefore, the Court finds that the ALJ made the required specific findings of fact in determining whether Plaintiff met the criteria for disability, and the findings were supported by substantial evidence. 42 U.S.C. §§ 405(g), 1382c; Brown, 845 F.2d at 1213; Johnson, 529 F.3d at 200; Pierce, 487 U.S. at 552; Hartranft, 181 F.3d at 360; Plummer, 186 F.3d at 427; Jones, 364 F.3d at 503. Substantial evidence is less than a preponderance of the evidence, but more than a mere scintilla of evidence. It does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). Thus, if a reasonable mind might accept the relevant evidence as adequate to support the conclusion reached by the Acting Commissioner, then the Acting Commissioner's determination is supported by substantial evidence and stands. Monsour Med. Ctr., 806 F.2d at 1190. Here, a reasonable mind might accept the relevant

evidence as adequate. Accordingly, the Court will affirm the decision of the Commissioner pursuant to 42 U.S.C. § 405(g).

An appropriate Order in accordance with this Memorandum will follow.

Dated: September 8, 2014

_____
s/Gerald B. Cohn
GERALD B. COHN
UNITED STATES MAGISTRATE JUDGE